T.C. Memo. 2021-92

UNITED STATES TAX COURT

ESTATE OF KWANG LEE, DECEASED,
ANTHONY J. FRESE, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20531-18L.               Filed July 20, 2021.

<u>Frank Agostino</u> and <u>Andrew D. Lendrum</u>, for petitioner.

<u>Marco Franco</u> and <u>Rachel L. Schiffman</u>, for respondent.

MEMORANDUM OPINION

GREAVES, <u>Judge</u>:  In this collection due process (CDP) case the Estate of

Kwang Lee, Deceased (estate), seeks review pursuant to section 6320(c)[1]

_____

[1]Unless otherwise noted, all section references are to the Internal Revenue
Code (Code) in effect at all relevant times, all Rule references are to the Tax Court
Rules of Practice and Procedure, and all dollar amounts are rounded to the nearest
dollar.

**[\*2]** (incorporating section 6330(d)) of the determination by the Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of Federal tax lien. The IRS initiated the collection action with respect to the estate's Federal estate tax liability. Respondent has moved for summary judgment under Rule 121 (motion), contending that there are no disputed issues of material fact and that the determination to sustain the proposed collection action was proper as a matter of law. We agree and accordingly will grant the motion.

## Background

The following facts are based on the parties' pleadings and motion papers, including attached declarations and exhibits, unless otherwise stated, and are not disputed. Anthony J. Frese, acting in his capacity as executor of the estate, had a mailing address in Hackensack, New Jersey, when he filed the petition.

Kwang Lee died testate on September 30, 2001, and Mr. Frese, a licensed attorney and municipal court judge, was named executor of the estate. Mr. Frese filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, on behalf of the estate on or around May 21, 2003. From July 2003 to February 2007, Mr. Frese made distributions to estate beneficiaries totaling $1,045,000 (distributed amounts), of which $640,000 was distributed on February 28, 2007 (February 2007 distribution).

**[*3]** The IRS selected the estate's return for examination and determined a $1,020,129 deficiency in estate tax, plus a $255,032 section 6651(a)(1) addition to tax for untimely filing and a $204,026 section 6662(a) accuracy-related penalty. The IRS mailed a notice of deficiency to Mr. Frese, as executor of the estate, on April 26, 2006. Mr. Frese timely filed a petition for redetermination of the deficiency with this Court. Estate of Lee v. Commissioner, T.C. docket No. 14511-06 (filed July 27, 2006). The Court entered a decision on March 24, 2010 (2010 decision), finding a $536,151 deficiency in estate tax due from the estate with no addition to tax or penalty. Id. Respondent assessed the unpaid tax against the estate on July 19, 2010.[2]

On April 16, 2013, respondent sent the estate a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. In response, the estate timely submitted Form 12153, Request for a Collection Due Process or Equivalent

---

[2]The unpaid tax with interest totaled $484,948 as of September 14, 2020. In objecting to the motion, the estate stated that this amount should be reduced by certain interest and fees that the estate intends to submit to respondent in the future and which the estate argues should have been considered by respondent in the evaluation of its offer-in-compromise. The estate did not specifically raise this argument in the petition; therefore, we do not consider it in deciding this case. See Rule 331(b)(4); McLaine v. Commissioner, 138 T.C. 228, 244 (2012).

[*4] Hearing, with the IRS Office of Appeals (Appeals Office).[3] In its request, the estate checked the collection alternative boxes "Installment Agreement" and "Offer in Compromise" (OIC).

At the estate's request, the Appeals Office held the CDP case in suspense until 2016.[4] In December 2016, the estate submitted Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, which showed that the estate's only asset was a checking account with a balance of $182,941. The estate also submitted an OIC in the same amount to the Appeals Office settlement officer (SO) assigned to the estate's CDP case. In reviewing the estate's OIC and upon the advice of respondent's Collection Division and Office of Chief Counsel, the SO determined that: (1) the IRS could potentially collect the distributed amounts from Mr. Frese using a fiduciary liability theory under 31 U.S.C. sec. 3713 and from the beneficiaries as transferees under section 6324(a)(2); (2) the period of limitations to collect from both Mr. Frese and the beneficiaries remained open; and (3) these potentially collectible amounts had to

---

[3]This office is now referred to as the "Independent Office of Appeals". Taxpayer First Act, Pub. L. No. 116-25, sec. 1001, 133 Stat. at 983 (2019).

[4]The parties agreed to put the CDP case in suspense to allow the estate and the U.S. Department of Justice time to explore a global settlement (which included a refund claim filed by the estate of decedent's spouse) and the estate to file an appeal of the 2010 decision with the U.S. Court of Appeals for the Third Circuit.

**[\*5]** be included in the estate's reasonable collection potential (RCP) calculation for purposes of reviewing the estate's OIC per Internal Revenue Manual pt. 5.8.4.3.1 (Apr. 30, 2015). Including the distributed amounts in the RCP formula yielded a collection potential that exceeded the estate's unpaid estate tax liability. Consequently, the SO rejected the estate's OIC and sustained the filing of the notice of Federal tax lien. As part of the summary report attached to the notice of determination, the SO noted that he had "verified the requirements of any applicable law or administrative procedure were met" and confirmed through IRS records that all required notices were properly issued to the estate.

The estate timely filed a petition with this Court challenging the SO's determination. Specifically, the estate argues that: (1) the SO's rejection of the OIC constituted an abuse of discretion in that the SO erred in computing the estate's RCP by improperly including the distributed amounts in this calculation and (2) the SO failed to verify that all applicable laws and regulations were followed before issuing the notice of determination.

**[*6]**                                        <u>Discussion</u>

I.      <u>Summary Judgment</u>

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials.  <u>See</u> <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 116 T.C. 73, 74 (2001).  We may grant summary judgment where there is no genuine dispute of material fact and a decision may be rendered as a matter of law.  Rule 121(b); <u>Elec. Arts, Inc. v. Commissioner</u>, 118 T.C. 226, 238 (2002).  Furthermore, we construe the facts and draw all inferences in the light most favorable to the nonmoving party to decide whether summary judgment is appropriate.  <u>Bond v. Commissioner</u>, 100 T.C. 32, 36 (1993).  The nonmoving party may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine dispute for trial.  Rule 121(d); <u>Bond v. Commissioner</u>, 100 T.C. at 36.

II.     <u>Standard of Review</u>

Section 6320(b) permits a taxpayer to challenge an IRS lien before the Appeals Office, and section 6320(c) (incorporating section 6330(d)) provides for Tax Court review of an Appeals Office determination.  The Code does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case; rather, we are guided by our

[*7] precedents. Where (as here) the taxpayer's underlying liability is not in dispute, we review the IRS decision for abuse of discretion. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Goza v. Commissioner, 114 T.C. 176, 182 (2000). Abuse of discretion exists when a determination is "arbitrary, capricious, or without sound basis in fact or law." Schwartz v. Commissioner, 348 F. App'x 806, 808 (3d Cir. 2009) (quoting Murphy v. Commissioner, 125 T.C. at 320), aff'g T.C. Memo. 2008-117. In this regard the SO is "owed considerable deference" when considering the adequacy of a taxpayer's proposed OIC. Id. (citing Murphy v. Commissioner, 469 F.3d at 32). Thus, if the SO followed all statutory and administrative guidelines and provided a reasoned, balanced decision, the Court will not reweigh the equities. Thompson v. Commissioner, 140 T.C. 173, 179 (2013).

In deciding whether the SO abused his discretion in sustaining the collection action, we consider whether he (1) properly verified that the requirements of applicable law or administrative procedure have been met, (2) considered any relevant issues the estate raised, and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [the estate] that any collection action be no more intrusive than necessary." Sec. 6320(c) (incorporating section 6330(c)).

**[\*8]** Here, the estate challenges (1) whether the estate tax liability is collectible, an issue raised during the CDP hearing, and (2) whether the SO properly verified that all applicable laws and regulations were followed before issuing the notice of determination.

III.   Offer-in-Compromise

   A.   Reasonable Collection Potential

Section 7122(a) authorizes the IRS to compromise an outstanding tax liability, and the regulations set forth three grounds for such a compromise: (1) doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.  The estate proposed to compromise its estate tax liability based on doubt as to collectibility. The Secretary may compromise a tax liability based on doubt as to collectibility where the taxpayer's assets and income render full collection unlikely.  Id. subpara. (2).  Conversely the IRS may reject an OIC where the taxpayer's RCP is greater than the amount he proposes to pay.  See Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013); Murphy v. Commissioner, 125 T.C. at 309.  An SO is generally directed to reject offers substantially below the taxpayer's RCP where the offer is premised, as it was here,

[*9] on doubt as to collectibility.  See Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517.

The parties agree that the estate holds approximately $183,000 in a checking account that must be included in its RCP calculation.  The parties dispute whether the RCP formula should also include amounts potentially collectible from third parties, i.e., Mr. Frese and the beneficiaries, by reason of distributions from the estate that exceed the outstanding estate tax liability.  Accordingly, we consider whether the SO abused his discretion by including the distributed amounts in the RCP formula.

B.    Executor Liability

1.    Federal Priority Statute

The executor of an estate must pay the estate tax.  Sec. 2002.  The executor may be held personally liable under 31 U.S.C. sec. 3713, often referred to as the Federal Priority Statute (FPS), if the executor pays a debt of the estate before satisfying and paying a claim owed to the United States.  31 U.S.C. sec. 3713(b); sec. 20.2002-1, Estate Tax Regs. (defining a "debt" as including a beneficiary's distributive share of an estate).  The term "claim" for purposes of the FPS means "any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person,

[*10] organization, or entity other than another Federal agency", 31 U.S.C. sec. 3701(b)(1), and includes an estate's Federal tax liability, Bank of West v. Commissioner, 93 T.C. 462, 467 (1989); see also United States v. Moore, 423 U.S. 77, 84-85 (1975) (holding that phrases used in the FPS should be liberally interpreted). An executor is personally liable for the unpaid claims of the United States to the extent the executor makes a distribution of assets from the estate when either the estate was insolvent at the time of the distribution or the distribution rendered the estate insolvent and the executor had knowledge or notice of the Government's claim. 31 U.S.C. sec. 3713(b); Leigh v. Commissioner, 72 T.C. 1105, 1109 (1979); sec. 20.2002-1, Estate Tax Regs.

There is no genuine dispute that Mr. Frese, as executor of the estate, distributed estate assets that rendered the estate unable to satisfy respondent's deficiency claim. Specifically, before the $640,000 February 2007 distribution the estate had sufficient assets to satisfy respondent's approximately $536,100 estate tax deficiency claim, but following that distribution it retained assets of only approximately $183,000.[5] The estate disputes whether Mr. Frese had the requisite notice of respondent's claim.

---

[5]The amount of the February 2007 distribution exceeded the estate's unpaid estate tax liability; therefore we do not need to address the other distributions by Mr. Frese.

[*11] An executor must have had actual or constructive knowledge of the Government's claim when the estate had sufficient assets to pay it, or notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the Government's unpaid claim. Leigh v. Commissioner, 72 T.C. at 1109-1110; New v. Commissioner, 48 T.C. 671, 676-678 (1967); Irving Trust Co. v. Commissioner, 36 B.T.A. 146, 148 (1937). A notice of deficiency with respect to estate tax liabilities given to an executor before the executor's distribution of estate assets is sufficient to satisfy this notice requirement. See Viles v. Commissioner, 233 F.2d 376, 380 (6th Cir. 1956), aff'g T.C. Memo. 1955-142; Irving Trust Co. v. Commissioner, 36 B.T.A. at 148; see also Estate of Frost v. Commissioner, T.C. Memo. 1993-94, 1993 WL 75053, at *15 (holding that an executor's receipt of a letter from the estate's law firm indicating that the estate might owe additional taxes combined with the Commissioner's commencement of an examination of the estate's tax liabilities was sufficient to have put the executor on inquiry for purposes of the FPS before making a distribution of the estate's assets).

Respondent's notice of deficiency, issued to Mr. Frese before he made the February 2007 distribution, was sufficient to create a claim under the FPS. See Viles v. Commissioner, 233 F.2d at 379-380; Irving Trust Co. v. Commissioner,

**[*12]** 36 B.T.A. at 148; Estate of Frost v. Commissioner, 1993 WL 75053, at *15. Furthermore, the record establishes that Mr. Frese had actual knowledge of the unpaid claim at the time of the February 2007 distribution. Respondent mailed the notice of deficiency to Mr. Frese in April 2006, and Mr. Frese was a named party in the petition filed with this Court disputing that deficiency claim in July 2006. Estate of Lee v. Commissioner, T.C. docket No. 14511-06. The estate suggests that Mr. Frese made the February 2007 distribution at least in part upon the advice of the estate's tax adviser and that such reliance absolves him of liability. In support of this argument the estate relies upon Little v. Commissioner, 113 T.C. 474 (1999), where we found that an executor did not have the requisite knowledge for purposes of the FPS because the executor, who did not have a college degree, was unaware of any potential or pending Government claims against the estate and reasonably relied in good faith upon multiple erroneous reassurances from counsel that the estate had no Federal tax liabilities.

The present situation is materially distinguishable from Little. The estate offered no evidence to show that Mr. Frese relied upon the advice of the estate's tax adviser as it pertained to his decision to make distributions from the estate,

[*13] including the February 2007 distribution.[6]  Additionally, unlike the unsophisticated executor in Little who had no actual or constructive knowledge of the estate's tax liabilities at the time of the distributions, Mr. Frese, a licensed attorney and judge, made the February 2007 distribution with direct knowledge that respondent had determined an estate tax deficiency against the estate (respondent mailed him the notice of deficiency in April 2006) and that an action concerning that deficiency claim was pending before this Court.  Under these circumstances, Mr. Frese made the February 2007 distribution at his own peril, and any advice he may have received in this regard cannot absolve him from liability.  See King v. United States, 379 U.S. 329, 339-340 (1964); New v. Commissioner, 48 T.C. at 676-677; Irving Trust Co. v. Commissioner, 36 B.T.A. at 148.  Thus, Mr. Frese may be held personally liable under the FPS for the estate's unpaid estate tax that remains due following the February 2007 distribution.

---

[6]The estate points out that we found the estate not liable for an addition to tax for untimely filing in Estate of Lee v. Commissioner, T.C. Memo. 2009-84, because Mr. Frese reasonably relied upon the estate's attorney in filing the estate's tax return.  That case neither concerned nor considered advice given by the estate's attorney (or any other adviser) as it related to Mr. Frese's distributions of estate assets.

**[*14]**       2.       <u>Section 6901 and Period of Limitations</u>

The estate maintains that even if Mr. Frese could be liable for the unpaid estate tax under the FPS, the period of limitations on collection expired in 2013. The estate argues that pursuant to 28 U.S.C. sec. 2415(a) the applicable period of limitations in this case is six years from the February 2007 distribution. Thus, according to the estate, the SO's determination constituted an abuse of discretion because respondent had no basis to include the distributed amounts as part of the estate's RCP calculation given that the IRS' potential collection period against Mr. Frese had expired.

The estate misconstrues 28 U.S.C. sec. 2415 and overlooks the remedies available under the Code for respondent to potentially collect against Mr. Frese. Title 28 U.S.C. sec. 2415(a) provides in relevant part that actions brought by the Government "founded upon any contract express or implied in law or fact" must be filed within six years after the right of action accrues; however, this is only a general rule that contains within it the sweeping caveat "except as otherwise provided by Congress".[7] The statute further provides the following critical exception: "Nothing in this Act shall apply to actions brought under the Internal

---

[7]We express no opinion as to whether a claim under the FPS is a "contract" for purposes of 28 U.S.C. sec. 2415(a), as we find the statute expressly removes actions brought under the Code as discussed infra.

**[*15]** Revenue Code or incidental to the collection of taxes imposed by the United States." 28 U.S.C. sec. 2415(h).

Section 6901(a) provides that a fiduciary's liability for payment of an estate tax under the FPS is to be "assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred". See also sec. 7701(a)(6) (defining "fiduciary" as including an executor acting in a fiduciary capacity). Furthermore, the period of limitations for assessment against a fiduciary under the FPS is "not later than 1 year after the liability arises or not later than the expiration of the period for collection of the tax in respect of which such liability arises, whichever is the later." Sec. 6901(c)(3); sec. 301.6901-1(c)(4), Proced. & Admin. Regs. Section 6502(a)(1) in turn provides a 10-year period of limitations for the collection of estate taxes.

Respondent assessed the outstanding estate tax deficiency against the estate in July 2010, thereby starting at least a 10-year window for respondent to also pursue collection against Mr. Frese through section 6901 with respect to his FPS liability. This period was not only open when the SO determined the estate's RCP calculation in 2018 but has been suspended following the estate's request for a CDP hearing with the Appeals Office on May 17, 2013 (and the estate's appeal of

**[\*16]** that determination with this Court).  See sec. 6320(c) (incorporating section 6330(e)); see also sec. 6901(f).

On the basis of the foregoing, we conclude that the SO properly considered the potential collectibility from Mr. Frese to determine the estate's RCP calculation.[8]  Because it was proper for the RCP calculation to include Mr. Frese's potential liability under the FPS by reason of the February 2007 distribution, which exceeds the outstanding estate tax liability, we find it unnecessary to also address the liability of, and potential collection against, the beneficiaries for purposes of the estate's RCP computation.

IV.     Verification

The estate alleges that the SO failed to properly verify that all applicable laws and regulations were followed before issuing the notice of determination. The SO's report explicitly states that the SO confirmed that all applicable laws and procedures were followed in the estate's case.  The estate argues that the SO was required to independently investigate the amounts, if any, actually collectible from third parties, including an "evaluation of the hazards of litigation" and an analysis of the current financial status of such persons.  The estate cites no rule mandating

---

[8]The fact that respondent has not assessed or pursued collection against Mr. Frese to date has no bearing on this finding.

**[*17]** or suggesting that the SO should have taken such exhaustive action as it related to Mr. Frese's potential collection amount. Although the estate may disagree with this policy, we do not find it or the SO's actions in this case arbitrary or capricious under the circumstances, especially where the record shows that the SO acted diligently in considering the estate's concerns by consulting with respondent's Collection Division and Office of Chief Counsel in reaching his conclusion.

In summary we do not find the SO's decision to reject the estate's OIC and sustain respondent's lien action to have been undertaken in an arbitrary manner or made without a sound basis in fact or law. We will accordingly grant summary judgment in respondent's favor.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.